UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| DANIEL MARTIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:17-cv-00272-JRS-DLP |
| ROBERT WILKIE, Secretary, Department of Veterans Affairs[1] | ) | |
| Defendant. | ) | |

**Order on Defendant's Motion for Summary Judgment (ECF No. 37)**

Defendant Robert Wilkie's Motion for Summary Judgment (ECF No. 37) is fully briefed and ripe for decision. Having carefully considered the motion, response, reply, evidence, and applicable law, the Court concludes that the motion should be **granted** for the following reasons.

### I. Background

Plaintiff Daniel Martin ("Martin") alleges claims against Defendant Robert Wilkie, Secretary of the Department of Veterans Affairs ("Defendant"), for discrimination and retaliation in violation of Section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Compl. ¶¶ 27–35, ECF No. 1 at 5–6.) Specifically, Martin alleges that Defendant, by failing to hire Martin for two positions at the Richard L. Roudebush VA Medical Center ("Roudebush"), discriminated against him based on his disability and retaliated against him for his protected activity. (*Id.* ¶¶ 8–26.)

---

[1] Plaintiff originally sued Robert Snyder, who was then Acting Secretary, Department of Veterans Affairs. (*See* Compl., ECF No. 1.) Pursuant to Fed. R. Civ. P. 25(d), Snyder's "successor is automatically substituted as a party."

1

Defendant now moves for summary judgment. (ECF No. 37.) Construing all facts and reasonable inferences in the light most favorable to Martin, the pertinent, uncontroverted summary judgment evidence is as follows:

Martin has various disabilities arising from head injuries suffered during his military service, which resulted in his honorable discharge from the United States Navy. (Martin Dep. Tr. 24:8–10, 25:5–25, ECF No. 37-11 at 25–26.) Despite these disabilities, Martin has earned a bachelor's degree in electrical engineering and a master's degree in business administration and has risen to the position of Chief Engineer, overseeing Defendant's Fort Wayne and Marion locations. (*Id.* at 22:24–23:5, 40:7–16, 68:2–69:17.) The parties do not dispute that Martin is an "individual with a disability" within the meaning of the Rehabilitation Act, and there is evidence that decisionmakers at Roudebush were aware of his disability.

Before the events at issue in this case, Martin applied for several jobs with Defendant to no avail, so Martin filed an EEO complaint against Defendant alleging disability discrimination. (Compl. ¶ 12, ECF No. 1 at 2.) Then Defendant hired Martin as Electrical Engineer and Acting Assistant Chief Engineer in Iowa City in June 2014, (ECF No. 37-2 at 128; Martin Dep. Tr. 101:13–14, ECF No. 37-11 at 102), and Martin and Defendant settled his EEO complaint on July 7, 2014. (ECF No. 37-18.) The Settlement Agreement provided that Martin would "receive priority consideration in the Veteran Direct Hire Program for one year from the date of the last signature on this settlement agreement or when the complainant is hired, whichever comes first." (*Id.*) The parties do not dispute that Martin's 2014 EEO complaint constituted

2

protected activity, and there is evidence that decisionmakers at Roudebush were aware of his protected activity.

Martin applied for two positions at Roudebush after Defendant hired him in June 2014. In October 2014, Plaintiff applied for a general engineer position, Vacancy No. STA-583-15-1226952 EO BU. (ECF No. 42 at 7.) There were eleven applicants, six of whom were deemed eligible, including Plaintiff. (Chumley Decl. ¶ 6, ECF No. 37-1 at 2.) The vacancy was closed, and no one was hired. (*Id.*)

Over six months later, on May 26, 2015, Defendant posted another general engineer vacancy. (Def.'s Interrog. Resp. ¶ 18, ECF No. 37-16.) Martin did not apply, and Defendant hired Stuart Swint for the vacancy on June 5, 2015. (*Id.*) Defendant posted seven additional general engineer vacancies at Roudebush over the next two years. (*Id.*) Martin did not apply to any of the vacancies, and all were closed without a hire.

In April 2015, Martin applied for a lead engineer position, Vacancy No. STA-583-15-1378848. (Martin Dep. Tr. 139:2–15, ECF No. 37-11 at 140.) There were seven applicants, all of whom were deemed eligible. (Chumley Decl. ¶ 8, ECF No. 37-1 at 2.) The position was closed, and no one was hired. (*Id.*) Over six months later, in January 2016, Roudebush's Assistant Chief of Engineering relocated to Michigan, and his former position was posted as Vacancy No. MP-583-16-1597609 EO. (Def.'s Resp. Interrog. ¶ 19, ECF No. 37-16; Jerome Decl. ¶ 3, ECF No. 37-10.) Martin did

3

not apply to the posting, and Defendant hired Andrew Hawk for the position on January 22, 2016. (Def.'s Resp. Interrog. ¶ 19, ECF No. 37-16.) No other lead engineer vacancies at Roudebush were posted in the following two years. (*Id.*)

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party," *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017), but the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this employment discrimination and retaliation case, Plaintiff bears the "substantive evidentiary burden," *Anderson*, 477 U.S. at 254, of proving by preponderance of the evidence a prima facie case of discrimination or retaliation, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Thus, summary judgment for Defendant is warranted if, viewed in the light most favorable to Plaintiff, "the record as a whole could not lead a rational trier of fact" to find that Plaintiff's disability or protected activity caused Defendant's failure to hire Plaintiff. *See Matsushita*, 475

4

U.S. at 587; *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017).

### III. Discussion

In considering a motion for summary judgment in an employment discrimination or retaliation case, district courts should not sort evidence "into different piles, labeled 'direct' and 'indirect', that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). *Ortiz* abrogated the distinction between direct proof and indirect proof but did not "displace[ ] the burden-shifting analysis established in *McDonnell Douglas*," which courts had formerly referred to as the "indirect" method of proof. *Ferrill*, 860 F.3d at 499.

Post-*Ortiz*, it's clear that the *McDonnell Douglas* framework is just a "means to consider whether one fact (here, [disability or protected activity]) caused another (here, [failure to hire])[.]" *Ortiz*, 834 F.3d at 763; *see also Loyd v. Philips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir. 1994) ("The expression 'prima facie case' in Title VII litigation popularly refers to a common, but not exclusive, method of establishing a triable issue of intentional discrimination."). But here the parties evidently find the *McDonnell Douglas* framework fits this case—their arguments chiefly track its burden-shifting analysis—so the Court follows their lead while keeping an eye to the ultimate question: whether a rational trier of fact could find that Martin's disability or protected activity caused Defendant's failure to hire him. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F. 3d 216, 224 (7th Cir. 2017) (assessing evidence first

under *McDonnell Douglas*, because plaintiff "presented her argument in those terms," before assessing all the evidence cumulatively); *Ferrill*, 860 F.3d at 500 ("The parties and the district judge used the *McDonnell Douglas* burden-shifting method, so we'll do the same.").

Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of discriminatory or retaliatory failure to hire by showing (1) that he is an individual with a disability or engaged in protected activity; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012) (*McDonnell Douglas* applies to Rehabilitation Act claims).

At issue here are the second and fourth prongs—whether Martin applied and whether the relevant positions remained open. Defendant argues that Martin fails to establish a prima facie case because neither the October 2014 general engineer vacancy nor the April 2015 lead engineer vacancy remained open—both closed without a hire—and Martin applied to neither the May 2015 general engineer vacancy nor the January 2016 assistant chief vacancy. Martin responds that whether the October 2014 and April 2015 vacancies were closed is a disputed issue of material fact because, if they had truly closed, Defendant would not have subsequently hired Swint and Hawk. (Martin presents no evidence that Defendant actively sought applications for a general engineer position between the closing of the October 2014

6

vacancy and the posting of the May 2015 vacancy; nor that Defendant sought applications for a lead engineer position between the closing of the April 2015 vacancy and the posting of the January 2016 vacancy.)

To get to the ultimate issue, it's helpful to look past the abstract elements and focus instead on their inferential significance. The Seventh Circuit has helpfully explained the significance of the application requirement in *Loyd v. Philips Bros.* as follows:

> One who does not apply for a position for which applications are required normally would not get the job in any event. But, of course, it is not true that the causal gap can never be bridged by something short of the formal submission of an application. The factual setting of a dispute, not an abstracted formulation never intended to be all things to all cases, will determine what steps a plaintiff needed to have taken in order to sufficiently demonstrate that discriminatory decisionmaking may have actually affected *his* employment situation. For instance, where an employer ordinarily entertains applications for a certain type of job but a plaintiff is deterred from applying by the very discriminatory practices he is protesting yet can show that he would have applied had it not been for those practices, a sufficient preliminary link between discrimination and adverse consequence is established.
>
> . . . .
>
> So too (indeed more so) where an employer does not solicit and await applications but hands out promotions on its own initiative in a nonselective, serial fashion. If the plaintiff alleges that the employer's decision not to approach people of her status was itself illegitimately motivated and shows that but for such a practice she likely would have been approached, then all she must do to complete the chain of causation that would permit an initial inference of discriminatory treatment actually affecting her job situation is establish that, had the employer approached her, she would have accepted the offered position.

25 F.3d at 523 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977)).

7

Here, Defendant has a formal system of posting job openings and allowing employees (and, in many instances, the public) to apply for them through the USAJOBS website. (*See* Chumley Decl. and Exhibits A to F thereto, ECF No. 37-1 to 37-7.) *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985) ("If [the employer] had a formal system of posting job openings and allowing employees to apply for them, [plaintiff's] failure to apply for an assistant manager position would prevent her from establishing a prima facie case."). There is no evidence that Swint or Hawk were "hand[ed] out promotions on [Defendant's] own initiative in a nonselective, serial fashion." *Loyd*, 25 F.3d at 523. Rather, the uncontroverted evidence shows the vacancies were posted to USAJOBS. Nor is there any evidence that Defendant somehow hid vacancies posted to USAJOBS from Martin. (Chumley Decl. ¶¶ 7, 10, ECF No. 37-1; *id.*, Ex. C, ECF No. 37-4; *id.*, Ex. F, ECF No. 37-7.) Indeed, there is compelling evidence to the contrary: Martin has applied to twenty other positions with Defendant since May 2015. (Martin Dep. Tr. 160:18 *ff.*, ECF No. 37-11 at 161 *ff.*; ECF No. 37-19.) There is similarly no evidence of discriminatory or retaliatory practices so successful as to deter Martin from applying to the May 2015 or January 2016 vacancies. Again, Martin's application to twenty positions with Defendant since May 2015 is compelling evidence to the contrary, as is his rise to Chief Engineer through the same system.

There may be instances where the temporal proximity between one vacancy closing and another opening would permit a rational factfinder to treat the two as a single vacancy and, with additional supporting evidence, excuse a plaintiff's failure to apply

8

and infer discriminatory or retaliatory intent. But here, more than six months passed between the October 2014 general engineer vacancy's closing and the May 2015 vacancy's opening; likewise, more than six months passed between the April 2015 lead engineer vacancy's closing and the January 2016 vacancy's opening.

It is, of course, *possible* that Defendant engaged in an elaborate scheme to discriminate and retaliate against Martin by closing the positions, rejecting eleven other qualified applicants, waiting six months, and publicly posting similar vacancies hoping Martin would not apply. "But a motion for summary judgment requires the court to consider only reasonable inferences, not every conceivable inference." *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, 763 F.3d 743, 753 (7th Cir. 2014) (quoting *Box*, 772 F.2d at 1379). A rational factfinder could not infer that Martin's disability or protected activity caused Defendant's failure to hire him on these facts. For the October 2014 general engineer vacancy and the April 2015 lead engineer vacancy, Plaintiff was treated the same as the other eleven qualified applicants: he was not hired. For the May 2015 general engineer vacancy and the January 2016 assistant chief vacancy, Martin was treated the same as the untold millions who did not apply for the positions: he was not hired. Defendant is entitled to summary judgment.

## IV. Conclusion

For the reasons above, Defendant's motion for summary judgment (ECF No. 37) is **granted** and Plaintiff's claims are **dismissed** on the merits with prejudice. A final judgment will be entered separately.

9

**SO ORDERED.**

Date: 3/27/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Spenser Garrett Benge
CLEVELAND LEHNER CASSIDY
spenser@clcattorneys.com

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE
rachana.fischer@usdoj.gov

Meghan Uzzi Lehner
CLEVELAND LEHNER CASSIDY
meghan@clcattorneys.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov